# 15-2109

## In the United States Court of Appeals
## For the Second Circuit

WILLIAM A. HILL and TANICA BROWN, individually and on behalf of all others similarly situated,
*Plaintiffs, Appellants*

v.

DELAWARE NORTH COMPANIES SPORTSERVICES, INC.,
*Defendant, Appellee*

BALTIMORE ORIOLES LIMITED PARTNERSHIP,
*Intervenor*

*On Appeal from the Order of the United States District Court for the Western District of New York (Skretny, J.)*

**BRIEF OF APPELLANTS – PAGE PROOF**

Edwin David Hoskins
**The Law Offices of E. David Hoskins, LLC**
davidhoskins@hoskinslaw.com
90 State Street, Suite 700
Albany, NY 12207
Phone: 518-935-2672
Fax: 866-452-6407

Gary F. Lynch
Jamisen A. Etzel
**Carlson Lynch Sweet & Kilpela, LLP**
glynch@carlsonlynch.com
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: 412-322-9243
Fax: 412-231-0246

*Counsel for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... *iii*

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES........................................................1

STATEMENT OF THE CASE............................................................3

STATEMENT OF FACTS .................................................................5

SUMMARY OF ARGUMENT .........................................................11

STANDARD OF REVIEW ...............................................................14

ARGUMENT ...................................................................................14

I.  The Fair Labor Standards Act and the Section 13(a)(3)
    "Amusement or Recreational Establishment Exemption ........................14

II. The Section 13(a)(3) Exemption Does Not Extend to a
    Concessionaire That Is a Separate Legal Entity From the
    Host Recreational Establishment...............................................17

III. Delaware North's Operations at Oriole Park Constitute a
     Separate Establishment Which Does Not Qualify For
     the Section 13(a)(3) Exemption................................................31

    1.  The District Court Failed to Apply the Correct Test for
        Determining Whether Delaware North's Operations Are
        a Separate "Establishment" ................................................25

    2.  Physical Separation From Other Activities.........................29

    3.  Functional Operation as a Separate Unit With Separate
        Records and Separate Bookkeeping....................................31

i

4. No Interchange of Employees Between the Units .............................32

5. Delaware North's Oriole Park Operations Do Not Constitute an "Amusement or Recreational Establishment"................................................................................33

IV. A Genuine Issue of Material Fact Exists with Respect to the Question of Whether the Baltimore Orioles Qualify for the Section 13(a)(3) Exemption.........................................36

CONCLUSION ........................................................................................41

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*A.H. Phillips, Inc., v. Walling*, 324 U.S. 490 (1945) ...............................................16

*Auer v. Robbins*, 519 U.S. 452 (1997) ...................................................................23

*Barfield v. New York City Health and Hospitals Corp.*,
    537 F.3d 132 (2d Cir. 2008) ..........................................................................23

*Brennan v. Texas City Dike & Marina, Inc.*,
    492 F.2d 1115 (5th Cir. 1974) ......................................................................34

*Brennan v. Yellowstone Park Lines, Inc.*,
    478 F.2d 285 (10th Cir. 1973) ...............................................................25, 37

*Bridewell v. Cincinnati Reds*,
    68 F.3d 136 (6th Cir. 1995) ...............................................................37, 39, 40

*Chao v. Double JJ Resort Ranch*, 375 F.3d 393 (6th Cir. 2004)............................35

*Chen v. Major League Baseball Properties, Inc.*,
    798 F.3d 72 (2d Cir. 2015) ...................................................................passim

*Christensen v. Harris County*, 529 U.S. 576 (2000) ............................................23

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir 2009) ..........................16

*Dole v. Mr. W. Fireworks, Inc.*, 889 F.2d 543 (5th Cir.1989)...............................35

*Gibbs v. Montgomery County Agricultural Soc.*,
    140 F. Supp. 2d 835 (S.D. Ohio 2001).........................................................34

*Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004).................................................23

*Hamilton v. Tulsa County Pub. Facilities Auth.*,
    85 F.3d 494 (10th Cir. 1996) ........................................................33

*In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2d Cir. 2010)...........................16

*Ivanov v. Sunset Pools Management Inc.*,
    567 F.Supp.2d 189 (D.D.C. 2008)................................................28

*Mann v. Falk*, 523 F. App'x 549 (11th Cir. 2013) ....................................33

*Marshall v. New Hampshire Jockey Club, Inc.*,
    562 F.2d 1323 (1st Cir. 1977)............................................  passim

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003) …………………………………………………….14

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
    591 F.3d 101 (2d Cir. 2010) ..............................................14, 16

## Statutes

28 U.S.C. § 1291 ........................................................................1, 4

28 U.S.C. § 1331 ...........................................................................1

29 U.S.C. § 201 ............................................................................3

29 U.S.C. § 207 ...........................................................................14

29 U.S.C. § 213 ....................................................................passim

29 U.S.C. § 213(a)(2)(ii) (1961) .......................................................15

## Regulations

29 C.F.R. § 779.23 .......................................................................22

iv

29 C.F.R. § 779.204 ............................................................23

29 C.F.R. § 779.302 ............................................................34

29 C.F.R. § 779.305 .......................................................passim

29 C.F.R. § 779.385 ............................................................33

## Additional Sources

Pub.L. No. 89–601, Title II, § 201, 80 Stat. 830, 833 (1966); S.Rep.
No. 1487, 89th Cong., 2d Sess. reprinted in
1966 U.S.Code Cong. & Admin. News 3002, 3030................................................16

S.Rep. No. 145, 87th Cong., 1st Sess., reprinted in the 1961 U.S.
Code Cong. & Admin. News at 1620, 1647-48........................................................15

U.S. Department of Labor, Wage and Hour Opinion Letter,
FLSA2009-11, 2009 WL 649013 (January 15, 2009) ....................................passim

U.S. Department of Labor, Wage and Hour Opinion Letter,
WH-469, 1979 WL 62129 (Sept. 12, 1979) ............................................................35

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Appellants-Plaintiffs William A. Hill and Tanica P. Brown[1] appeal the following orders entered by the United States District Court for the Western District of New York, Honorable William H. Skretny: 1) the order granting Appellee-Defendant Delaware North's[2] motion for summary judgment and denying Appellants' motion for summary judgment, entered September 30, 2014 (Dkt. 107); and 2) the order granting Delaware North's motion for summary judgment with respect to the claims of Appellant Brown on June 5, 2015. (Dkt. 120.) Together, the two orders dismissed all parties and claims in this action, and a final judgment effectuating the two orders was entered on June 8, 2015 (Dkt. 121.) Appellants timely filed their Notice of Appeal on July 1, 2015. (Dkt. 122.)

## STATEMENT OF THE ISSUES

1.      Do the operations of an employer such as Delaware North qualify for the Section 13(a)(3) "amusement or recreational establishment" exemption to the FLSA's overtime requirements when that employer is a separate legal entity from

---

[1] Appellants Hill and Brown are also referred to in this brief as "Employees."
[2] For ease of reference in this brief, the Appellee is referred to as "Delaware North," and that name is also used to refer to Delaware North's subsidiaries.

1

the sports teams with which it contracts to provide food and merchandise vending at the sports facility, in light of a Department of Labor opinion in a directly analogous context that held the exemption does not extend to a concessionaire in such circumstances?

2.      Do the operations of Delaware North qualify for the Section 13(a)(3) "amusement or recreational establishment" exemption when: 1) the evidence below showed that Delaware North does not engage in the provision of amusement or recreational activities; and 2) Delaware North's operations do not constitute a "single establishment" in conjunction with the recreational host establishments with which Delaware North contracts (i.e., sports teams) because the evidence below showed that Delaware North: a) maintains physical separation from the activities of the host establishments; b) maintains business records and bookkeeping separate from the host establishments; and c) does not share any employees with the host establishments?

3.      Did Delaware North establish that there were no genuine issue of material fact with respect to the question of whether the Baltimore Orioles (the host team whose amusement activities Delaware North relied upon) qualify for the Section 13(a)(3) exemption, when the evidence showed that the Baltimore Orioles operate year-round at the Oriole Park facility (regardless of how long the Orioles were engaged in amusement or recreational activities), and insufficient evidence

was produced to demonstrate that the Orioles meet the "six-months receipt test" of Section 13(a)(3)?

## STATEMENT OF THE CASE

On September 8, 2011, Appellant Hill filed a Collective Action Complaint in the United States District Court for the Western District of New York alleging a violation of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201. (Dkt. 1.) Appellant Brown opted into the action as a plaintiff by filing a consent form on September 26, 2011. (Dkt. 7.) Delaware North filed a Motion to Dismiss on October 3, 2011, and Appellants filed the now-operative First Amended Class Action Complaint on November 21, 2011. (Dkts. 11, 26.) Delaware North challenged the First Amended Class Action Complaint on December 12, 2011, by filing a second Motion to Dismiss. (Dkt. 29.) The district court denied Delaware North's Motion on June 25, 2012. (Dkt. 38.) Delaware North then filed its Answer to the First Amended Class Action Complaint on July 3, 2012. (Dkt. 39.) Thereafter, the parties engaged in discovery.

On March 8, 2013, the Baltimore Orioles Limited Partnership filed a Notice of Motion to Intervene, which the district court granted by text order on March 13, 2013. (Dkts. 85, 89.) On January 6, 2014, the parties filed cross motions for summary judgment. (Dkts. 81, 85.) On March 28, 2014, Delaware North moved to consolidate *Hansbauer v. Delaware North Companies Sportservice, Inc.*, 14-cv-

00138 (W.D.N.Y.) with the *Hill* action. (Dkt. 96.) The district court granted the motion on April 14, 2014 and ordered that the *Hill* action would serve as the lead case. (Dkt. 100.)

On July 28, 2014, Magistrate Judge McCarthy issued a report and recommendation in which he recommended that the court grant Delaware North's motion for summary judgment and deny Employees' motion for summary judgment. (Dkt. 103.) Judge McCarthy ruled that the amusement or recreational exemption of § 213(a)(3) applied to the claims of Appellant Hill and recommended that the court grant summary judgment in Delaware North's favor. Appellants filed timely objections to the report and recommendation on August 13, 2014. (Dkt. 104); however, District Judge Skretny adopted the report and recommendation in full by text order on September 30, 2014. (Dkt. 107.)

This first report and recommendation and subsequent order addressed only the claims of Appellant Hill, and expressed no opinion regarding the impact of the ruling on Appellant Tanica Brown or William Hansbauer. (Dkt. 103 at 8–9.) As a result, the first summary judgment order did not constitute a "final decision" for purposes of appellate jurisdiction. *See* 28 U.S.C. § 1291. The parties jointly moved for deconsolidation of the *Hansbauer* action on November 10, 2014 (Dkt. 110), and the district court granted the motion on the same day. (Dkt. 111.) The parties agreed to stay the *Hansbauer* action during the pendency of this appeal. On

4

November 14, 2014, Delaware North filed a second motion for summary judgment

seeking to extend the holding of the first summary judgment order to the claims of

Appellant Brown. (Dkt. 112.)  Magistrate Judge McCarthy issued a second report

and recommendation on December 15, 2014 (Dkt. 116.), recommending that

Delaware North's motion be granted for the same reasons outlined in the first

report and recommendation. Appellant Brown filed timely objections on January 5,

2015 (Dkt. 117.); however, on June 5, 2015, the district court issued an order

adopting the second report and recommendation, dismissing the complaint, and

directing the clerk to close the case. (Dkt. 120.)  The court entered final judgment

on June 8, 2015. (Dkt. 121.) Employees filed their Notice of Appeal on July 1,

2015. (Dkt. 122.)

## STATEMENT OF FACTS

Delaware North operates concessions and retail stores at professional sports

venues and other locations throughout the nation.  Employees worked for

Delaware North in Baltimore, Maryland, at its operations in Oriole Park, the home

playing field of the Baltimore Orioles baseball team. (Dkt. 29-4 at 2.)  Employees

were routinely required to work in excess of forty hours per week without

receiving overtime compensation.  (Dkt. 82-1 at 42-48.) Relying upon the

"amusement or recreational establishment" exemption to the FLSA, Delaware

North did not pay overtime compensation to its non-exempt, hourly employees at

Oriole Park. Such employees were only paid their regular hourly rate of compensation for each hour of overtime worked. (Dkt. 82-1 at 42–48.) The applicability of the amusement or recreational establishment exemption is the subject of this appeal.

Aside from the contracts for the provision of food, beverage, and retail concession services, there is no other legal or financial relationship between Delaware North and the Baltimore Orioles. (Dkt. 82-1 at 34–37.) In this regard, and with respect to Delaware North's subsidiary Maryland Sportservice, Inc., Delaware North's Rule 30(b)(6) corporate designee testified as follows:

> Q. Other than those two relationships, is there any other financial relationship between Maryland Sportservice, Inc. and the Baltimore Orioles?
>
> A. No, there is not.
>
> Q. And is there – to your knowledge, is there any other financial relationship between any Delaware north entity and the Baltimore Orioles?
>
> A. No, there's not.
>
> Q. So Maryland Sportservice, Inc. doesn't have any ownership interest in the Baltimore Orioles; is that correct?
>
> A. None.
>
> Q. And no Delaware North corporation or other entity has any ownership interest in the Baltimore Orioles.
>
> A. No.

6

> Q. And the sole relationship is simply the contract for the provision of beverages, food, and merchandise that we've been talking about and these occasional rentals of the mascot.
>
> A. Yes.

((Dkt. 82-1 at 36-37.)

Delaware North maintains complete physical separation from the activities of the Baltimore Orioles. For example, employees of the Baltimore Orioles are permitted to enter their work sites using any gate or access point, while Delaware North employees are required to use a separate, designated entrance and pass through a security checkpoint maintained and staffed by Delaware North. (Dkt. 82-1 at 150-165.) The Orioles Team Store, where Employees worked, is controlled and operated exclusively and separately by Delaware North. The store is open seven days a week from 10 AM to 5 PM on non-game days. The store is also open during the duration of all home games. Two sets of doors provide access to the store for customers. A set of doors provides access from the east side of the warehouse, when games are not in progress, and a set of doors provides access from the west side of the warehouse during game times. On non-game days, the store is open to the public. The Orioles Team Store is physically separated from the seating bowl and stadium mini gift stores. (Dkt. 82-1 at 150-165.) During non-game times, the seating bowl and playing field are gated and not open to the

public, while the Eutaw Street Promenade (providing access to the Team Store), located between the old B&O Warehouse and the baseball stadium, is open to the public. This physical separation is illustrated on the facility map and photograph of the B&O Warehouse, attached as Exhibit 4 to the deposition of Defendant's Rule 30(b)(6) corporate designee, which illustrates that the location of the B&O Warehouse is separate and distinct from the playing field and the seating bowl. (Dkt. 82-1 at 150-165 & Exhibit 4.) Only Delaware North's employees have access to the Team Store's stockroom and are exclusively responsible for locking and unlocking and arming and disarming the Team Stores' alarm system. Delaware North and its employees have exclusive access and control over the Team Store, located in the B&O Warehouse. (Dkt. 82-1 at 150-165.)

Delaware North's employees also have exclusive access to and control over the thirty-four concession stands and eleven mini gift stores located outside the seating areas of the playing field. Each of these physical locations is exclusively controlled by Delaware North and its employees. All supplies for these stands and stores are kept physically separate from the Baltimore Orioles and its employees. (Dkt. 82-1 at 150-165.)

At the end of each business day, all cash from sales made by Defendant's employees is delivered to Defendant's cash office located adjacent to Defendant's

office. Defendant's cash office is also exclusively controlled by Defendant and its employees. (Dkt. 82-1at 150-165.)

Delaware North's employees also provide vending services in the seating bowl during game times. All the food and beer sold by Delaware North's employees are supplied by Delaware North. The food and beer supplies are maintained in a physically separate cafeteria that is exclusively controlled by Delaware North and accessible only to employees of Delaware North. When Delaware North's employees need to obtain more food and beer to sell, they reload their trays by going to this cafeteria which is exclusively accessible to Delaware North and its employees. (Dkt. 82-1 at 150-165.) The areas where Delaware North maintains its merchandise at Oriole Park is within the exclusive control of Delaware North. (Dkt. 82-1at 99-100.) Delaware North operates independently of the Baltimore Orioles baseball team, and, aside from satisfying its obligations under the service contract, Delaware North's operations are not directed by the Orioles. (Dkt. 82-1 at 92 – "Q: Maryland Sportservice is free to decide how much food it needs, where to procure the food, and it – it has sole responsibility for arranging its delivery and its storage at Oriole Park, and the Orioles have nothing to do with it, correct? A: Yes.")

The Baltimore Orioles have no involvement whatsoever in the payment of Delaware North's employees, the cash receipts and/or deposit of receipts from

Delaware North's operations, or the payment of Delaware North's vendors and suppliers. (Dkt. 82-1 at 173-175.) The financial books of Delaware North are not owned or controlled in any way by the Baltimore Orioles. (Dkt. 82-1 at 173-174.) Delaware North does not share any common supplies with the Baltimore Orioles. (Dkt. 82-1 at 175.) There is a complete demarcation of the purchases made by Delaware North and the purchases made by the Baltimore Orioles. (Dkt. 82-1 at 176.) There is no interchange of employees between Delaware North and the Baltimore Orioles. (Dkt. 82-1 at 178.) With the exception of designated smoking areas and access to the Baltimore Orioles executive offices, the Baltimore Orioles have no input regarding the employee rules and work regulations issued by Delaware North. (Dkt. 82-1at 115-117.) The Baltimore Orioles have no input regarding Delaware North's code of conduct. (Dkt. 82-1 at 131.) The Baltimore Orioles have no input regarding the information contained in the employment applications completed by new hires of Delaware North. (Dkt. 82-1 at 122-123.) The Baltimore Orioles have no input regarding the hiring decisions of Delaware North. (Dkt. 82-1 at 123.) The Baltimore Orioles had no input regarding the decision to terminate Appellant Hill's employment. (Dkt. 82-1 at 135.) Employees of Delaware North who work in Oriole Park do not punch the same time clock as employees of the Baltimore Orioles, but rather have a designated time clock used exclusively by employees of Delaware North. (Dkt. 82-1 at 159.)

## <u>SUMMARY OF ARGUMENT</u>

> *"Because your client and the recreational establishment are separate legal entities, and because your client does not qualify as an amusement or recreational establishment, your client is ineligible for the section 13(a)(3) exemption."*
>
> (*United States Department of Labor*)[3]

Delaware North, a provider of food and merchandise concessions at sporting venues across the country, routinely required Employees to work in excess of forty hours per week, without receiving overtime, at its operations at Oriole Park, the home field of the Baltimore Orioles baseball team.   Delaware North's operations at Oriole Park are governed by a written agreement with the Orioles, by which it is given the opportunity to sell food and merchandise to the general public at Oriole Park, mostly during Baltimore Orioles baseball games.   Other than its agreement with the Orioles to provide vending services at Oriole Park, Delaware North has no legal relationship with the Baltimore Orioles and operates as a completely separate legal entity.

In refusing to comply with the FLSA's overtime requirements, Delaware North relies upon Section 13(a)(3) of the FLSA, which exempts employees of a "recreational or amusement establishment."   Delaware North claims that its operations at Oriole Park are part of the "baseball experience," and, therefore, it

---

[3] U.S. Department of Labor, Wage and Hour Opinion Letter, FLSA2009-11, 2009 WL 649013 (January 15, 2009).

must be seen as part of the same "establishment" as the Baltimore Orioles for purposes of the Section 13(a)(3) exemption. On cross motions for summary judgment concerning the applicability of the Section 13(a)(3) exemption, the district court accepted Delaware North's argument and entered judgement against Employees.

Contrary to the decision of the district court, there are several ways in which the Section 13(a)(3) exemption fails for Delaware North. First, as a threshold matter, the United States Department of Labor has concluded, in an opinion letter addressing a directly analogous fact pattern, that Delaware North's reliance upon the amusement and recreational activities of the Baltimore Orioles is precluded by the fact that Delaware North is a separate legal entity from the Orioles baseball team, which serves as the "host establishment." In other words, according the Department of Labor, separate and distinct legal entities having only a contractual relationship cannot be considered to be part of a single establishment for purposes of the Section 13(a)(3) exemption, even when the entities are located at the same premises. The Department of Labor regulations support the reasoning set forth in its opinion letter. Accordingly, the Department of Labor opinion letter should be treated as having "persuasive value" or, alternatively, to the extent that the regulations are ambiguous on this issue, the Department of Labor opinion letter should be given deference.

Even if this Court declines to follow the guidance of the Department of Labor and concludes that Delaware North's lack of any legal relationship with the Baltimore Orioles does not, by definition, preclude it from being a single establishment with the Orioles, Delaware North still does not qualify for the Section 13(a)(3) exemption because it is not itself an "amusement or recreational establishment" and it cannot, under the Department of Labor's multi-prong test, establish that it is part of a "single establishment" with the Baltimore Orioles, because Delaware North: (1) maintains physical separation from the activities of the Orioles baseball team; (2) operates as a functionally separate unit with separate records and bookkeeping; and (3) employs its own workforce with no interchange of employees with the Orioles.

Finally, Delaware North has not established that a combined "single establishment," which includes Delaware North and the Baltimore Orioles, would qualify for the Section 13(a)(3) exemption. Looking at the complete operations at Oriole Park pertaining to the Orioles baseball team (the source of the amusement or recreational character of the proposed single establishment), Delaware North has not established that such establishment operates for less than seven months in any calendar year or that it meets the six-month receipts test.

For any or all of the foregoing reasons, the district court's granting of summary judgment should be reversed and judgment entered in the Employees'

favor.

## STANDARD OF REVIEW

Orders granting summary judgment are reviewed by this Court *de novo*.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

Summary judgment is appropriate only if the moving party shows that there are no

genuine issues of material fact and that the moving party is entitled to judgment as

a matter of law. *Id.* All factual inferences must be drawn in favor of the non-

moving party. *Id.*

## ARGUMENT

### I. The Fair Labor Standards Act and the Section 13(a)(3) "Amusement or Recreational Establishment" Exemption

Congress enacted the FLSA in order "to eliminate labor conditions

detrimental to the maintenance of the minimum standard of living necessary for

health, efficiency, and general well-being of workers." *Reiseck v. Universal

Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010) (quoting 29 U.S.C. §§

202(a)). To those ends, 29 U.S.C. § 207 requires that employers pay an overtime

premium of one and one-half times the regular rate of pay for those hours that an

employee works in excess of the standard forty hour work week. 29 U.S.C. §

207(a)(1). Section 13 of the FLSA, however, lists various exemptions to the

statute's minimum wage and overtime compensation requirements. 29 U.S.C. §

213.

Section 13(a)(3) provides an employer-based exemption for "amusement or recreational establishments":

> The provisions of ... section 207 of this title shall not apply with respect to ... any employee employed by an establishment which is an amusement or recreational establishment ... if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year[.]

29 U.S.C. § 213(a), (a)(3). Under this provision, an employer qualifies for exemption if it is an amusement or recreational establishment and satisfies either the seasonal operation test or the six-month receipts test. *Id.*

The Section 13(a)(3) exemption was created by amendment to the FLSA in 1961. S.Rep. No. 145, 87th Cong., 1st Sess., reprinted in the 1961 U.S. Code Cong. & Admin. News at 1620, 1647–48. Following this amendment, "employees of an amusement or recreational establishment operating on a seasonal basis were exempt only if the establishment was also a "retail or service establishment" with more than half its sales occurring in intrastate commerce. *Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1326 (1st Cir. 1977) (quoting 29 U.S.C. § 213(a)(2)(ii) (1961) *repealed by* Pub.L. 101–157, § 3(c), 103 Stat. 938, 939 (1989)). In 1966 the exemption for amusement and recreational establishments was removed from Section 13(a)(2); and, thereafter, a revised exemption was

15

created at Section 13(a)(3), where the amusement and recreational establishment exemption currently remains. Pub.L. No. 89–601, Title II, § 201, 80 Stat. 830, 833 (1966); S.Rep. No. 1487, 89th Cong., 2d Sess. reprinted in 1966 U.S. Code Cong. & Admin. News 3002, 3030. The "current wording seems to have been intended to establish criteria for seasonality, and by eliminating the 'retail and service' language to make plain that employees of seasonal amusement or recreational companies generally are exempt." *Marshall,* 562 F.2d at 1329.

"Specialized principles apply to [this Court's] review of a district court's construction of the FLSA." *Reiseck*, 591 F.3d at 104. The FLSA is a remedial law, and its exemptions "'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 81 (2d Cir. 2015) (quoting *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531 (2d Cir 2009). "To extend an exception to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *A.H. Phillips, Inc., v. Walling*, 324 U.S. 490, 493 (1945). "The burden of proving that employees fall within such an exemption is on the employer." *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010).

## II. The Section 13(a)(3) Exemption Does Not Extend to a Concessionaire That Is a Separate Legal Entity From the Host Recreational Establishment

Delaware North operates as a concessionaire at Oriole Park, the home field of the Baltimore Orioles baseball team. Delaware North's only legal relationship to the Baltimore Orioles baseball team is a written contract with the Orioles pursuant to which Delaware North sells food and merchandise at Oriole Park, mostly during Oriole baseball games. It is otherwise a separate legal entity from the Orioles.

The United States Department of Labor ("DOL") has issued an opinion letter specifically indicating that the Section 13(a)(3) exemption for "amusement or recreational establishments" does not extend to a concessionaire like Delaware North that operates at the same location as, but is a separate legal entity from, the host amusement or recreational establishment, when the only relationship between the parties is an exclusive contract for the provision of concessionaire services. *See* U.S. Department of Labor, Wage and Hour Opinion Letter, FLSA2009-11, 2009 WL 649013 (January 15, 2009) ("2009 Opinion Letter"). The facts at issue in FLSA2009-11 were stated by DOL as follows:

> Your client holds an exclusive contract with the owner of a recreational establishment to provide various catering services to the general public and to private parties who use the facility. All of your client's operations are conducted at the establishment. No other legal relationship exists between the owners of

17

> the recreational establishment and your client. We
> assume that the recreational establishment contracting for
> the catering services is, for purposes of this response,
> within the scope of the section 13(a)(3) exemption. In
> addition, for the purpose of this response, we assume
> that your client is an enterprise covered by the FLSA. You
> inquire whether a recreational or amusement
> establishment and a concessionaire that are not a "single
> establishment," but are two separate legal entities
> working under a mutually beneficial contract, may both
> claim the section 13(a)(3) exemption.

(2009 Opinion Letter). In concluding that the concessionaire did not qualify for the

Section 13(a)(3) exemption, the DOL explained that the concessionaire could not be

considered part of the recreational establishment with which it contracted to provide

concessionaire services, because it was a separate legal entity from the host

recreational establishment, and the concessionaire activities themselves were not

"amusement or recreational" in character:

> In order to claim the section 13(a)(3) exemption, the
> employer must be an amusement or recreational
> establishment. . . The section 13(a)(3) exemption "depends
> upon the character of the establishment in which the
> employee is employed. Restaurants are not generally
> recognized as amusement or recreational in character.
> Employees of a restaurant operating on the premises of an
> amusement or recreational establishment . . . may come
> within the section 13(a)(3) exemption provided the
> operations of the restaurant and host establishment
> constitute a single establishment." Wage and Hour Opinion
> Letter Feb. 1, 1982.

> ***

18

> It is our understanding that your client operates as a separate unit with separate records and bookkeeping from the recreational establishment and there is no interchange of employees between the two entities. Further, based on the information you provided, your client is not itself an amusement or recreational establishment, but is a legal entity separate from the recreational establishment where its employees work. Thus, your client and the recreational establishment with which it contracts are not a "single establishment." Because your client and the recreational establishment are separate legal entities, and because your client does not qualify as an amusement or recreational establishment, your client is ineligible for the section 13(a)(3) exemption.

*Id.* This case is nearly identical to the fact pattern addressed by the DOL in the 2009 Opinion Letter. Like the concessionaire in the 2009 Opinion Letter, Delaware North is a separate legal entity from the Orioles baseball team, which acts as the "host recreational establishment." Delaware North holds an exclusive contract with the Orioles to sell food and merchandise to the general public who visit Oriole Park. Following the reasoning of the DOL in the 2009 Opinion Letter, Delaware North's separate legal status and lack of any other legal relationship with the Orioles baseball team precludes it from being a "single establishment" with the Orioles. Delaware North therefore cannot rely upon the amusement or recreational character of the Orioles' business for purposes of claiming the section 13(a)(3). Further, like the concessionaire in the 2009 Opinion Letter, Delaware North's

business is not itself amusement or recreational in character. Accordingly, Delaware North is not eligible for the section 13(a)(3) exemption.

The 2009 Opinion Letter is consistent with the decisions of this Court and the regulations issued by the DOL which define "establishment" for purposes of the 13(a)(3) exemption. This Court recently had occasion to discuss the FLSA's Section 13(a)(3) exemption for "amusement or recreational establishments" and specifically addressed the definition of "establishment" in the context of the exemption. *See Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72 (2d. Cir. 2015). In *Chen,* plaintiff, a volunteer at Major League Baseball's "FanFest," a five day event held in New York City during the 2013 All Star Game festivities, brought suit under the FLSA and New York state law, claiming he was not properly considered a volunteer and was therefore entitled to minimum wage compensation for his work at the FanFest event. Defendants moved to dismiss the claim, arguing that 1) plaintiff was not an employee within the meaning of the FLSA and 2) FanFest was exempt from the FLSA's minimum wage requirements as an "amusement or recreational establishment." *Chen*, 798 F.3d at 75. The district court granted defendants' motion, concluding that FanFest met the requirements for the section 13(a)(3) exemption. *Id.*

On appeal, this Court, recognizing that it had not previously addressed the amusement or recreational establishment exemption, first sought to determine the

20

meaning of the term "establishment" for purposes of the exemption. *Chen*, 798

F.3d at 75–76. Because the FLSA does not define the term "establishment," this

Court reviewed the legislative history of the exemption, Supreme Court precedent

regarding the exemption and the applicable regulations issued by the DOL. *Id.*

Ultimately, this Court concluded that, for purposes of the section 13(a)(3)

exemption, "establishment" means a distinct, physical place of business, as

opposed to an integrated multi-unit business or enterprise:

> The DOL's regulations are, as the district court found, "well-reasoned, internally consistent, and generally consistent with judicial interpretations of the exemption," and, as such, supply a persuasive interpretation of the statute.
>
> Based on the foregoing, we conclude that Congress used the term "establishment" for purposes of the exemption at Section 13(a)(3) to mean a distinct, physical place of business as opposed to an integrated multiunit business or enterprise.

*Chen*, 798 F.3d at 78–79 (citations and footnotes omitted).

Based upon its definition of "establishment," this Court affirmed the district

court's dismissal of the plaintiff's claim and held that FanFest was a separate

"enterprise" from the rest of Defendants' operations, largely because FanFest was

not located at the same premises as Defendants' other business units. *Chen*, 798

F.3d at 81. As a separate enterprise, FanFest had the character of an amusement or

21

recreational business and met the seasonality requirements for the section 13(a)(3) exemption. *Id.*

In reaching its decision, this Court rejected the plaintiff's contention that the Court must apply the multi-prong test set forth in the DOL regulations (29 C.F.R. § 779.305)[4] to determine the relevant "establishment" for purposes of the section 13(a)(3) exemption. According to this Court, use of the DOL's multi-prong test is limited to situations where multiple business units are located on the same premises. *Chen*, 798 F.3d at 79. When the business units in question are not located at the same premises, the general rule applies that each distinct physical place of business constitutes a separate "establishment." *Chen*, 798 F.3d at 79–80. By way of example, this Court cited the 2009 Opinion Letter, as well as two other DOL Opinion Letters, all of which dealt with situations where two or more business units were operating at the same premises. *Id.*

The DOL has issued several regulations addressing the definition of "establishment" (29 C.F.R. § 779.23), distinguishing between an "establishment,"

---

[4] This regulation sets forth the test to determine whether "two or more physically separated portions of a business though located on the same premises . . . may constitute more than one establishment for purposes of the exemptions" and defines a separate establishment as one that is: 1) "physically separated from the other activities [performed at the same location];" 2) "functionally operated as a separate unit having separate records, and separate bookkeeping;" and 3) not undertaking any "interchange of employees between the units." 29 C.F.R. § 779.305; *Chen,* 798 F.3d at 79.

an "enterprise," an "employer," and a "business" (29 C.F.R. §§ 779.203, 779.303), setting forth a multi-prong test for determining whether two or more business units operating on same premises can be treated as separate "establishments" (29 C.F.R. § 779.305), and defining common types of "enterprises" (29 C.F.R. § 779.204). These regulations are consistent with the 2009 Opinion Letter indicating that two legally separate entities, by definition, cannot be part of the same "establishment" for purposes of the section 13(a)(3) exemption, even if they are located at the same premises.

To the extent that the DOL's regulations are unambiguously supportive of the notion that two legally separate entities cannot, by definition, be part of the same "establishment," the 2009 Opinion Letter would merely add "persuasive value" to the analysis. *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 149 (2d Cir. 2008) (quoting *Gualandi v. Adams*, 385 F.3d 236, 243 (2d Cir. 2004) (The DOL's opinion letters represent "a body of experience and informed judgment to which courts and litigants may properly resort for guidance")). To the extent that the DOL regulations are not unambiguously supportive of the notion that two legally separate entities cannot, by definition, constitute the same "establishment," such regulations are at least ambiguous on this point, in which case the 2009 Opinion Letter should be given deference. *Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (citing *Auer v. Robbins*,

519 U.S. 452, 461 (1997) (deference to agency interpretation is warranted when regulations are ambiguous).

### III. Delaware North's Operations at Oriole Park Constitute a Separate Establishment Which Does Not Qualify for the Section 13(a)(3) Exemption

Even if this Court concludes that Delaware North's status as a separate legal entity does not preclude it, by definition, from being included with the Baltimore Orioles baseball team in a "single establishment" for purposes of the Section 13(a)(3) exemption, Delaware North, upon application of the DOL's multi-prong test, is nevertheless appropriately treated as a separate establishment from the Baltimore Orioles. Accordingly, because it does not itself engage in amusement or recreational activities, Delaware North does not qualify for the section 13(a)(3) exemption.

The district court concluded that the "relevant establishment" in this case is "Oriole Park at Camden Yards." (Dkt. 103 at 5). In doing so, the district court failed to apply the proper test for determining whether multiple business units operating at a single location may be considered a "single establishment" for purposes of qualifying for the Section 13(a)(3) exemption. Put simply, if the facts that were before the district court were analyzed using the appropriate test, the result should be a finding that the operations of Delaware North at Oriole Park and the operations of the Baltimore Orioles at Oriole Park are distinct

24

"establishments," despite their coexistence in a large sports venue.  Once the

establishments are properly distinguished, it becomes evident that Delaware

North's operations, which are limited to the provision of food and retail services,

are not of a recreational or amusement character and do not qualify for the

exemption.

### 1. The District Court Failed to Apply the Correct Test for Determining Whether Delaware North's Operations Are a Separate "Establishment"

The district court erred by concluding that Delaware North's operations

qualify as an "amusement or recreational establishment" simply based on the

court's finding that the provision of food and retail services is "integral" to the

"baseball experience." (Dkt. 103 at 5–7.) The court disregarded DOL regulations

that are directly on point, and the court's conclusion presupposed that Delaware

North's food and retail operations are a single establishment in conjunction with

the baseball operations of the Baltimore Orioles.

As mentioned above, this Court previously found that "establishment"

means "a distinct, physical place of business as opposed to an integrated multiunit

business or enterprise." *Chen*, 798 F.3d at 77–79.  Other circuits have accepted the

same definition.  *See Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d

1323, 1330 (1st Cir. 1977); *Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285,

289–90 (10th Cir. 1973).

Employees demonstrated to the district court that Oriole Park is comprised of multiple business units with discrete functions. (Dkt. 82 at 5–9.) As such, the court should have conducted an analysis of whether Oriole Park is composed of more than one "establishment." *Chen*, 798 F.3d at 79. A Department of Labor regulation directly addresses this issue:

> Although ... two or more departments of a business may constitute a single establishment, two or more physically separated portions of a business though located on the same premises, and even under the same roof in some circumstances may constitute more than one establishment for purposes of exemptions. In order to affect such a result physical separation is a prerequisite. In addition, the physically separated portions of the business also must be engaged in operations which are functionally separated from each other .... In other words, [a] portion of an establishment would be considered a separate establishment from the unrelated portion for the purpose of the exemption if: (a) It is physically separated from the other activities; and (b) it is functionally operated as a separate unit having separate records, and separate bookkeeping; and (c) there is no interchange of employees between the units.

29 C.F.R. § 779.305. Although the Court in *Chen* found that the multi-factor test was not pertinent to the case before it, the Court noted that "[29 C.F.R. § 779.305] describes the test for distinguishing whether 'two or more physically separated portions of a business though located on the same premises … may constitute more than one establishment for purposes of the exemptions." *Chen*, 798 F.3d at 79 (quoting 29 C.F.R. § 779.305); *see also id.* at 80 ("DOL letters applying 29 C.F.R.

§ 779.305 do so because the parties seeking agency guidance concerning the Section 13(a)(3) exemption had multiple business units operating at the same premises."). The *Chen* court also noted that the multi-factor test was applied by the First Circuit *Marshall*, "because potentially separate establishments operated at the same physical location." *Chen*, 798 F.3d at 80 (discussing *Marshall*, 562 F.2d at 1330–33).

Thus, the mere fact that Delaware North provides food and retail services at a sports venue is insufficient on its own to bring Delaware North's operations within the exemption if those activities are functionally distinct from the recreational activities. Whether the business operations in question arguably complement the recreational activities conducted on the same premises is neither relevant nor dispositive, as the district court presumed. Instead, the multi-factor test described in 29 C.F.R. § 779.305 is *precisely* how the district court should have resolved whether the various business units at Oriole Park comprise more than one establishment. If so, the specific establishment in question must be evaluated *independently* to determine whether it qualifies for the Section 13(a)(3) exemption.

The same DOL regulation provides a helpful illustration:

> For retailing and other functionally unrelated activities performed on the same premises to be considered as performed in separate establishments, a distinct physical place of business engaged in each category of activities

27

> must be identifiable. The retail portion of the business must be distinct and separate from and unrelated to that portion of the business devoted to other activities. For example, a firm may engage in selling groceries at retail and at the same place of business be engaged in an unrelated activity, such as the incubation of chicks for sale to growers. The retail grocery portion of the business could be considered as a separate establishment for purposes of the exemption, if it is physically segregated from the hatchery and has separate employees and separate records.

29 C.F.R. § 779.305; *see also, e.g.*, *Ivanov v. Sunset Pools Management Inc.*, 567 F.Supp.2d 189, 193–94 (D.D.C. 2008) (applying elements from test to determine that hotel swimming pools that were operated and maintained by a separate company, independently from the hotels, were a separate establishment from the host hotels). Here, the sale of food and merchandise, like the sale of groceries and the operation of a hotel, is a functionally unrelated activity as compared to the staging of a baseball game, the hatching of chicks, or the operation and maintenance of a swimming pool, respectively. Whether these pairs of activities constitute unitary or separate establishments can only be resolved by examining the facts of the particular case as applied to the factors described in 29 C.F.R. § 779.305.

It was error for the district court to ignore this test and instead rely only the placement of Delaware North's food and retail units within the confines of Oriole Park and the speculation that the sale of food and merchandise may enhance a

person's enjoyment of baseball. As explained below, if the multi-factor test had been applied, the record clearly demonstrated that Delaware North operates as a separate establishment from the baseball operations of the Baltimore Orioles.

## 2. Physical Separation From Other Activities

The evidentiary record clearly shows that Delaware North maintains physical separation from the activities of the Baltimore Orioles. Employees of the Baltimore Orioles are permitted to enter their work sites using any gate or access point, while Delaware North employees are required to use a separate, designated entrance and pass through a security checkpoint maintained and staffed by Delaware North. (Dkt. 82-1 at 150–65.) The Orioles Team Store, where Employees worked, is controlled and operated exclusively and separately by Delaware North. (*Id.*) The store is open seven days a week from 10 AM to 5 PM on non-game days. (*Id.*) The store is also open during the duration of all home games. (*Id.*) Two sets of doors provide access to the store for its customers. A set of doors provides access from the east side of the warehouse, when games are not in progress, and a set of doors provides access from the west side of the warehouse during game times. (*Id.*) On non-game days, the store is open to the general public. (*Id.*) The Orioles Team Store, which is controlled exclusively by Delaware North, is physically separated from the seating bowl and stadium mini gift stores. (*Id.*)

29

During non-game times, the seating bowl and stadium are gated and not open to the public, while the Eutaw Street Promenade (providing access to the Team Store), located between the old B&O Warehouse and the playing field, is open to the public. (Dkt. 82-1 at 150–65.) This physical separation is illustrated on the facility map and photograph of the B&O Warehouse, attached as Exhibit 4 to the deposition of Delaware North's Rule 30(b)(6) corporate designee, which illustrates that the location of the B&O Warehouse is separate and distinct from the playing field and the seating bowl. (Dkt. 82-1 at Ex. 4.) Only Delaware North's employees have access to the Team Store's stockroom and are exclusively responsible for locking and unlocking and arming and disarming the Team Stores' alarm system. Delaware North and its employees have exclusive access and control over the Team Store, located in the B&O Warehouse. (Dkt. 82-1 at 150–65.)

Delaware North's employees also have exclusive access to and control over the thirty-four concession stands and eleven mini gift stores located outside the seating areas of the stadium. (Dkt. 82-1 at 150–65.) Each of these physical locations is exclusively controlled by the Delaware North and its employees. (*Id.*) All supplies for these stands and stores are kept physically separate from the Baltimore Orioles and its employees. (*Id.*) At the end of each business day, all cash from sales made by Delaware North's employees is delivered to Delaware North's cash office located adjacent to Delaware North's office. (*Id.*) Delaware North's

30

cash office is also exclusively controlled by Delaware North and its employees. (*Id.*) Delaware North's employees also provide vending services in the seating bowl during game times. (*Id.*) All the food and beer sold by Delaware North's employees is supplied by Delaware North. (*Id.*) The food and beer supplies are maintained in a physically separate cafeteria that is exclusively controlled by Delaware North and accessible only to employees of Delaware North. (*Id.*) When Delaware North's employees need to obtain more food and beer to sell, they reload their trays by going to this cafeteria which is exclusively accessible to Delaware North and its employees. (*Id.*)

In light of the above-referenced record evidence, there can be no dispute that Delaware North maintains physical separation from the activities of the host establishment, the Baltimore Orioles baseball team.

### 3. Functional Operation as a Separate Unit With Separate Records and Separate Bookkeeping

The record also establishes that Delaware North operates independently of the Baltimore Orioles baseball team and maintains completely separate books and records. Aside from satisfying its obligations under their service contract, Delaware North's operations are not directed by the Orioles. (Dkt. 82-1 at 92.) The Baltimore Orioles have no involvement whatsoever in the payment of Delaware North's employees, the cash receipts and/or deposit of receipts from Delaware North's operations, or the payment of Delaware North's vendors and

31

suppliers. (Dkt. 82-1 at 173–75.) The financial books of Delaware North are not owned or controlled in any way by the Baltimore Orioles. (Dkt. 82-1 at 173–74.) Delaware North does not share any common supplies with the Baltimore Orioles. (Dkt. 82-1 at 175.) Finally, there is a complete demarcation of the purchases made by Delaware North and the purchases made by the Baltimore Orioles. (Dkt. 82-1 at 176.)

### 4. No Interchange of Employees Between the Units

Finally, it is undisputed that Delaware North employs its own workforce with no interchange of employees between it and the Baltimore Orioles. (Dkt. 82-1 at 178.) With the exception of designated smoking areas and access to the Baltimore Orioles executive offices, the Baltimore Orioles have no input regarding the employee rules and work regulations issued by Delaware North. (Dkt. 82-1 at 115–17.) The Baltimore Orioles have no input regarding Delaware North's code of conduct. (Dkt. 82-1 at 131.) The Baltimore Orioles have no input regarding the information contained in the employment applications completed by new hires of Delaware North. (Dkt. 82-1 at 122–23) The Baltimore Orioles have no input regarding the hiring decisions of Delaware North. (Dkt. 82-1 at 123.) The Baltimore Orioles had no input regarding the decision to terminate Appellant Hill's employment. (Dkt. 82-1 at 134–35.) Delaware North employees do not punch the same time clock as employees of the Baltimore Orioles, but rather have a

designated time clock used exclusively by employees of Delaware North. (Dkt. 82-1 at 159.)

Analyzing all three factors of the DOL's multi-prong test, it is clear that Delaware North's business at Oriole Park is a separate establishment from the Baltimore Orioles.

### 5. Delaware North's Oriole Park Operations Do Not Constitute an "Amusement or Recreational Establishment"

As a separate establishment from the baseball operations at Oriole Park, Delaware North's operations are not covered by the Section 13(a)(3) exemption because Delaware North's food and retail services are not of an amusement or recreational character. Although the FLSA does not define "amusement or recreational establishments," a DOL regulation defines them, somewhat circularly, as "establishments frequented by the public for its amusement or recreation." 29 C.F.R. § 779.385.

Courts evaluating the exemption have looked to the nature of the principal activity of the establishment. *See, e.g.*, *Mann v. Falk*, 523 F. App'x 549, 552 (11th Cir. 2013) ("[T]he business of a recreational establishment is to provide amusement or entertainment for its customers…. A recreational establishment must also sell recreation or entertainment as its 'principal activity.'"); *Hamilton v. Tulsa County Pub. Facilities Auth.*, 85 F.3d 494, 497 (10th Cir. 1996) ("It is the

33

character of the revenue producing activity which affords the employer the
protection of the exemption"); *Marshall*, 562 F.2d at 1331 n.4 (exemption "turns
on the nature of the employer's business, not on the nature of the employee's
work"); *Gibbs v. Montgomery County Agricultural Soc.*, 140 F. Supp. 2d 835,
843–44 (S.D. Ohio 2001) (the employer's principal activities determine the
applicability of the exemption); *Brennan v. Texas City Dike & Marina, Inc.*, 492
F.2d 1115, 1119 (5th Cir. 1974) ("principal activity" of establishment determines
eligibility for exemption); *see also* 29 C.F.R. § 779.302 (Section 13(a)(3)
exemption "depend[s] on the character of the establishment by which an employee
is employed.")

Delaware North's operations at Oriole Park involve the provision of food,
beverage, and retail concession services, and nothing more. (Dkt. 82-1 at 11, 31–
32; Dkt. 29-4 at 2.) Establishments that solely sell food or merchandise are not the
type that Congress intended Section 13(a)(3) to exempt. This conclusion finds
support in a 1979 opinion letter from the Wage and Hour Administrator, which
makes clear that:

> [E]ating places do not have an amusement or recreational
> character. Nor do ... gas stations.... The fact that these
> stores are heavily patronized by tourists does not make
> them recreational or amusement establishments any more
> than restaurants, retail stores, and similar establishments
> at a seaside resort would be considered exempt.

U.S. Department of Labor, Wage and Hour Opinion Letter, WH-469, 1979 WL 62129 (Sept. 12, 1979); *see also* 2009 Opinion Letter ("Restaurants are not generally recognized as amusement or recreational in character.")

 If every food or retail establishment that shared premises with recreational or amusement establishments could claim the exemption, the exemption would swallow the rule. *See e.g.*, *Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 396-97 (6th Cir. 2004) ("Arguably, any ice-cream stand or restaurant could qualify under Double JJ's proposed interpretation. A boat seller could claim that it was derivatively a 'recreational establishment,' given that its sales enable the fun of sailing. It would certainly not be a laughable claim under Double JJ's definition that the boat seller is in the 'recreation business.' Most businesses sell something – a thing, a service, a right to occupy – and any number of arguments could be marshaled to connect the remote sale to something fun. Thus, unlike Double JJ, we do not believe we can end our analysis with a plain-language interpretation of section 213(a)."); *Dole v. Mr. W. Fireworks, Inc.*, 889 F.2d 543, 546 (5th Cir. 1989) ("permitting every seaside merchant to claim the exemption would result in the exemption swallowing the rule").

 Here, Delaware North's principal activity is not the sale of recreational activities. Instead, Delaware North provides food, beverage and retail concessions to attendees of sporting and other entertainment events. As such, and because its

operations at Oriole Park are a separate establishment from those of the Baltimore Orioles, Delaware North's operations at Oriole Park do not qualify for the Section 13(a)(3) exemption.

### IV. A Genuine Issue of Material Fact Exists with Respect to the Question of Whether the Combined "Single Establishment" of the Baltimore Orioles and Delaware North Qualifies for the Section 13(a)(3) Exemption

Even if this Court determines that two legally separate and distinct entities can be included in a single establishment for purposes of the Section 13(a)(3) exemption and that, applying the DOL's multi-part test, Delaware North is properly included in a single establishment with the Baltimore Orioles with respect to their business operations at Oriole Park, the District Court nevertheless erred when it concluded, incorrectly, that it was "undisputed that Oriole Park (including the concession services provided by Delaware North) operated as an amusement or recreational establishment for a span of just five months and twenty-four days during all of 2011." (Dkt. 103 at 7–8.) The District Court reached this conclusion by too narrowly defining the "establishment" as presumably being just the portions of Oriole Park where the baseball games were played, as opposed to the entire Orioles operation located at Oriole Park, which function there on a year-round basis.

In *Chen*, this Court interpreted "establishment" for purposes of the exemption at Section 13(a)(3) "to mean a distinct, physical *place of business* as

36

opposed to an integrated multiunit business or enterprise." *Chen*, 798 F.3d at 79

(emphasis supplied).[5] This Court further noted that the case before it was

distinguishable from other "baseball-related cases," most notably *Bridewell v.*

*Cincinnati Reds*, 68 F.3d 136 (6th Cir. 1995), where it was determined that,

because the "Reds' maintenance employees ran the scoreboard, operated the

concessions, and cleaned the facilities year-round, the establishment did not

qualify as seasonal." *Chen*, 798 F.3d at 80.

The district court had before it specific provisions of the Lease Agreement

between the Maryland Stadium Authority and the Baltimore Orioles that

demonstrated that the Baltimore Orioles operate year-round at Oriole Park.

Specifically, Exhibit E to the Agreement provides a "List of Orioles' Exclusive

Year-Round Premises at Oriole Park at Camden Yards," which includes the

playing field and seating bowl as well as significant portions of five floors of the

adjacent Warehouse. (Dkt. 95.) The lease demonstrates that the Orioles base of

operations is Oriole Park and that the Orioles conduct year-round business

activities at that location, including ticket sales and telemarketing as well as

upkeep and maintenance of the playing surface, which occur year-round. In fact

---

[5] Citing *Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285, 289–90 (10th Cir. 1973) (concluding that "'establishment' as used in § 13(a)(3) is to be judged in the same light as that term is judged under § 13(a)(2)").

there was no evidence before the district court that the Orioles conducted the business of running a baseball team anywhere else but at Oriole Park.

Additionally, the Rent Schedule at Exhibit D to the Agreement illustrated that the Orioles earned receipts throughout the year from numerous sources, including: (1) admission receipts for the regular season which include not only game day sales of tickets, but—much more significantly—receipts for the sale of season ticket packages that occur well in advance of the start of the season; (2) concessions receipts which include sales from the restaurant and the apparel store that Delaware North concedes are operated year-round, and (3) receipts for ball park advertising, the timing of the payments for which were also not accounted for by Delaware North or the district court, but obviously would have occurred *before* the baseball season began. (*Id.*)

There are also additional sources of receipts, most notably television and radio broadcast rights receipts and receipts based upon baseball's luxury tax. Again, Delaware North failed to offer any evidence as to when these receipts were paid to the Orioles and therefore failed to carry its burden of establishing that the business operations of the Orioles were actually completed in "just five months and twenty-four days during all of 2011."

Delaware North also failed to provide evidence that the Orioles did not have year-round employees or that maintenance of the playing surface and the stadium

38

did not occur year-round as well. Without this evidence, the district court could not properly conclude that the Orioles operations did not exceed seven months each year. For this reason alone, summary judgment was inappropriate.

This is why appellate courts that have addressed the issue have concluded that Major League Baseball teams, like the Baltimore Orioles, do not qualify for the amusement or recreational establishment exemption based solely on the length of the baseball season. For example, in *Bridewell* v. *Cincinnati Reds*, 68 F.3d 136 (6th Cir. 1995), the Sixth Circuit found that the Cincinnati Reds baseball team was a year-round operation, even though it did not provide amusement and recreation year-round and, accordingly, such organization did not fulfill the requirement that it not operate for more than seven months in any calendar year:

> In view of the stipulated facts, it seems to us that the parties incorrectly focus on the duration of the Reds' activities at Riverfront rather than on the duration of the Reds' overall operation. An entity seeking to invoke the § 213(a)(3) exemption must both be an amusement or recreational establishment and operate for fewer than eight months per year. The Reds would have us conflate these separate requirements and instead ask whether the Reds are an establishment that stages amusement activities for fewer than eight months per year. There is nothing in the Act that would suggest that this is the correct approach. The proper inquiry is, assuming arguendo that the Reds are an amusement or recreational establishment, whether the Reds operate for more than seven months per year, not whether they are an entity that provides amusement or recreation for its customers for more than seven months per year.

> It is clear from the stipulated facts that the Reds do indeed operate for more than seven months per year. While a truly seasonal business that employs an insignificant number of workers year-round could conceivably qualify for the exemption, the fact that the Reds employ 120 year-round workers compels the conclusion that they "operate" year-round.
>
> Because the Reds operate for more than seven months in a calendar year, they were not entitled to summary judgment based upon 29 U.S.C. § 213(a)(3).

68 F.3d at 138–38.

After remand, the Cincinnati Reds attempted to prove that they met the prerequisites for the exemption because its average receipts from the six month off-season did not amount to more than 33 and 1/3 percent of its average receipts during the six-month baseball season. The district court ultimately granted summary judgment in favor of the plaintiff on this issue and the Sixth Circuit affirmed. *Bridewell* v. *Cincinnati Reds*, 155 F.3d 828, 829 (6th Cir. 1998).

For these reasons the district court erred when it concluded that "Delaware North has demonstrated that the recreational establishment satisfied 'Test A' of § 213(a)(3) since it did not operate for more than seven months in 2011…" (Dkt. No. 103 at 8.). Delaware North did not carry its burden to establish its entitlement to the Section 13(a)(3) exemption and therefore summary judgment against the Employees should be reversed and judgment entered in their favor. *Chen*, F.3d at 81–82.

40

## **CONCLUSION**

For the foregoing reasons, the Employees respectfully request this Court vacate the judgment entered by the district court on June 8, 2015, in favor of Delaware North and against the Employees, and to remand this case to the district court with instructions to enter summary judgment in favor of the Employees.

Dated:  October 14, 2015                                  Respectfully submitted,

/s/ Gary F. Lynch
Gary F. Lynch
Jamisen A. Etzel
CARLSON LYNCH SWEET &
KILPELA, LLP
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) (412) 322-9243
(f) (412) 231-0246

Edwin David Hoskins
THE LAW OFFICES OF E. DAVID
HOSKINS, LLC
davidhoskins@hoskinslaw.com
90 State Street, Suite 700
Albany, NY 12207
Phone:  518-935-2672
Fax:  866-452-6407

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 9,471 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as counted by Microsoft Word 2013, which was used to produce this brief. I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6), the typestyle requirements of Fed. R. App. P. 32(a)(6), and the form requirements of Fed. R. App. P. 32(c)(2), because the brief has been prepared using Microsoft Word 2013 in 14-point Times New Roman font.


/s/ Gary F. Lynch
Gary F. Lynch

42